Thank you. The next case for oral argument is People v. Anthony Murray. Good morning, Your Honors. I am Clyde Keene and I am here today on behalf of Anthony Murray, who is presently serving a substantial prison sentence for first degree murder at Menard Penitentiary. I might ask the question whether or not the guilty verdict and the process to the guilty verdict against Anthony Murray was constitutionally flawed by the deficient performance of this counsel. The answer to that is I'm not quite sure. I might also ask whether or not this conviction is premised in part on knowingly tendered false testimony, a violation of due process. And of that, the answer is I'm not completely sure. But I ask these questions and give these answers to set the course on the right course of where we are today and what we are appealing today. I am merely here asking for something Anthony Murray did not do in trial, but an evidentiary hearing to flesh out issues that show that potentially there was a substantial constitutional violation or two in the course of the process of Murray's trial. Let me turn to the second question because I think I can demonstrate the substantial nature of this claim and why we need an evidentiary hearing. In the first trial of Anthony Murray, a witness named Georgette Anderson testified to a mistake. They put her on to testify under oath and vouched for her credibility. In that trial, one of the things that she said, along with the fact that Anthony Murray stabbed Jones and Linden, was that sharply before the stabbing occurred, a man by the name of Tyrone Edwards ran into the kitchen at the scene of the crime and rifled through the kitchen drawers to obtain a statement which turned out to be a murder weapon. That witness was not called by the state in the second trial. And because of that, Tyrone Edwards, who had by that time pled guilty to involuntary manslaughter and attempted robbery because of the incident, was the sole witness to say that Murray stabbed Jones. Until, of course, the defense counsel called Georgette Anderson. But that being said, this key witness testified at the second trial upon questioning by the prosecutor who had stood next to him when he pled guilty to involuntary manslaughter and robbery. And that prosecutor elicited from him testimony from Edwards that I never touched a knife. I had nothing to do with robbery. I was asked to participate in the robbery and I said I wouldn't stand for it. And that testimony was allowed to stand in the face of the fact that the prosecutor who elicited it had stood before a court and given a factual basis for the plea in which he said the accountability during the plea was the fact that Edwards had obtained a knife and possessed the murder weapon. Is that significant evidence to have presented in a false manner and not corrected? Of course it is, because there are two witnesses that say that Edwards was the stabber. John Hayes testified that Edwards stabbed Jones. Why do we even need an evidentiary hearing? Have we lost already because Judge Mindendorf decided to rule on the facts of this case and not grant a hearing? I think it's very important to call Mr. Creason and ask if he believed when he stated to the court that Edwards possessed the murder weapon, the knife, whether he believed that. And if he did, why he didn't correct that with the jury because that's an important fact that Edwards possessed the murder weapon. And it was an important fact negating his guilt by him able to say I never touched the knife and the prosecutor allowing that to stand. What makes it worse, and of course the other front of why there was a substantial showing of a need for a hearing, is the fact that there was a litany of bad language in the course of the second trial. I don't know the reasons behind some of it, and I think an evidentiary hearing is called for to inquire into it. Perhaps there were some reasons for some of the decisions that were made, but one thing that was not done, and the defense counsel knew it, was to force the prosecutor to correct for the jury the fact that he had just elicited false testimony. That his star witness and only witness had testified falsely to a critical fact under oath to this jury to make them believe him. But defense counsel did not do that. Instead, defense counsel called the witness that had testified in the fact. He didn't ask about whether or not she saw Edwards rifling in through a knife. Forgot to ask that. All he asked was who stabbed Jones, and she said your client. In addition to that, he made a very bad judgment in terms of a courtroom stunt in which it precluded the ability to call Elliott Stevens, who was a witness who did not see who stabbed Mr. Jones, but he was a witness to say it wasn't Murray. He testified at the first trial, and actually when you read his testimony in the first trial, he was relatively on page. He wasn't a perfect witness, but there wasn't a single one that was among the state witnesses or defense witnesses that testified. But because of having him in the courtroom to demonstrate his presence and see if Jarjet Anderson could identify him, the trial judge precluded him from hearing. So I don't know whether or not this is an evidentiary hearing needed for that. Yes, I believe so because no one has ever asked Mr. Howell to explain whether or not this was a part of strategy. Mr. Feen, Stevens testified at some point that Murray wasn't even there. Is that correct? That's right. Did he ever give inconsistent testimony? The state makes a good point of the fact that this had to be trial strategy. And I don't know whether it was or wasn't. I'm going to get back to why I'm here. I want to hear him. The state argues it's like there's been a hearing and says deny the right to a hearing because it's obvious that this was trial strategy because he would have called Elliott. Elliott would have been inconsistent with the now new alibi witnesses that were presented on behalf of Murray's testimony, killing the woman that Murray claimed to be with Murray with Killian, but at Killian's house and not at the apartment of Tanisha Johnson. That's the only inconsistency. And I submit to you that the thrust of what Stevens could have testified to would have been far more corroborative of an alibi than it would have been inconsistent and therefore present a picture of a fabricated alibi. Stevens could have easily said, well, you know, I testified to the house, but I, you know, I saw them inside the house. And even though I said it was Killian's house, it was really the apartment. And that minor inconsistency would not have detracted sufficiently enough from his testimony that you wouldn't use it under the circumstances involved in this case. In order for a trial strategy to be, to protect against a claim of ineffective assistance of the defense counsel, there has to be a reasonable trial strategy. I mean, any trial strategy. Sound trial strategy. And there's a broad, as the court is well aware, we give a lot of leeway to defense counsel and there are a lot of And mistakes being made of the nature that were made in this case compounded, I believe, and I think that with a proper evidentiary hearing, which Murray is entitled to, a good claim of ineffective assistance of counsel rests there, although I think the overriding claim is right on the false testimony to stand in front of this jury from his key witness. Another thing that's in the record in the state says, well, it was just a surprise. I mean, this is just hindsight. It's just a surprise that he brought out, defense counsel brought out the fact that the defendant had been previously convicted by another jury through the cross-examination of Hayes. But if you look at how he brought it out, it brings you to the old way of continuing legal education courses and they say in the art of cross-examination, you don't ask a question that you don't know the answer to. And you don't ask an individual who pled guilty to the murder, to second degree murder, why did you plead guilty to second degree murder if you weren't guilty? And not know that you're risking him saying, because your client got convicted and he wasn't even there. But if that wasn't bad enough, he sat silent when Mr. Creason took advantage of that and argued to the jury that the prior jury's conviction was evidence of the defendant's guilt. Did the defense attorney file a motion in limine to exclude any reference to the prior jury conviction? I mean, had there been any pre-trial order on that? I can only answer to that, Judge. I don't know. But it wasn't brought out by the state. It was brought out by defense counsel's open-ended question of John Hayes. The other thing that points to the litany and the combined nature of the performance of counsel in this showing of a potential constitutional error was the fact that when John Hayes hit the stand, he was asked by the prosecutor who stabbed Seneca Jones. And his answer was Tyrone Edwards. And the prosecutor was genuinely taken by surprise because he and the investigators had debriefed this witness three days before he testified and had gone over his testimony and had anticipated that he was going to lay the finger on Mr. Murray. What happened thereafter was a harsh and brutal impeachment with those statements that were never disclosed to the defense before he testified. In other words, Mr. Creason went on a tirade. Didn't you tell my investigator on Friday and went through these statements? Now, that was never disclosed. An objection was registered. There was a sidebar. And the trial judge looked to defense counsel and said, well, you want to cite me some authority that would bar this testimony? And counsel forgot about Supreme Court Rule 412 that clearly requires all memorandum of oral statements to be disclosed prior to trial. Had he done that, he would have been saddled with a pretty difficult situation from the testimony of John Hayes because most of his impeachment came from those debriefings that he and the investigator had with Hayes before he testified. Also, in that regard, the jury was given an instruction that prior inconsistent statements could be used both as impeachment and substantive evidence. But that's not the case with regard to the filled statements that they impeached Hayes with. They were oral statements. And that should have been clarified with the jury by instruction that the questioning of Mr. Hayes about his prior statements was not evidence of the defendant's guilt, but only evidence that you can consider in terms of his believability when he says that Edwards, not the defendant, stabbed Kaycon Jones. And I go back with regard to this entire picture of this case and look at how it could have been defended and why there is a substantial constitutional question of effective counsel. The answer is that Edwards rifled through the kitchen drawer for a knife. And that was uncontradicted, absolutely believed evidence by the prosecutor, put it in the statement of facts for the accountability of Edwards at the plea of Edwards. I want to emphasize to the court, because a lot of the state's brief deals with, I think, argument appropriate after a hearing is properly granted. I want to emphasize that we're not asking this court to grant a new trial for this man. That's a long way down the road. I imagine if things run their course and reticence that trial judges have for granting post-conviction relief that this court will visit this case again if it grants a hearing. But it should grant a hearing because under the petition, it's allegations, it's supporting affidavits, there has been a substantial showing. And I might add one more thing. The decision in this case will be very simple. It's a simple decision to write. Because all the author has to do is look at People v. Mankiewicz, the third district district who written a wonderful, dispositive opinion. And I would think, although appellate districts don't always see eye to eye, with regard to something as basic as whether or not a petition states a substantial showing of a constitutional violation, there ought to be commonality of opinion. And this opinion writes itself by virtue of that case. It is dispositive of this case. If there are any questions? I don't believe so. Thank you, counsel. Counsel? May it please the court. Of course, the George Howard bit was attacked throughout. Defendant's brief is not the George Howard we're familiar with in southern Illinois. He's actually an attorney that I became very familiar with during my 25 years as a prosecutor up in Cook County. Absolutely top of the line. Assistant state attorneys in Chicago love to go up against George Howard, but they lost a lot because he was about the best there was in defending murder trials. And his best characteristics were his ability to think on his feet. Are these opinions that we should take into account in deciding this case, Mr. Sweeney? You want to file an affidavit about all these things? Well, the only thing that the defendant's brief mentions about George Howard is that he got in trouble with the ARDC, and he deserved to. But I think the court should be aware that this is a very experienced and very successful practitioner. But the trial record here reflects exactly what I'm saying, that he was a master of thinking on his feet in courtroom strategy. Now, here's this. Look at the situation he had here. The defendant's convicted at the first trial. So at a retrial, and George Howard was the one who got the retrial, thanks to his legal skills. You have to expect that ordinarily at a retrial, there's going to be another conviction because, you know, the state has had the advantage of, you know, having the evidence presented, knows the case better than it did going into the first trial. Well, let me ask you a question about that, Mr. Sweeney, because you argue throughout your brief about how the first jury rejected this witness's testimony and so forth and so on. The trial court vacated the first conviction because of a jury problem. Because of a problem with one jury. Right, right. One jury. In other words, the trial court believed that a problem in that jury so, whatever you want to call it, invaded the ability of that jury to make a decision that it couldn't be trusted. So how can we take these arguments that you make throughout your brief about how because there was a first conviction, that means that the jury is not going to be trusted? They rejected testimony. I don't think the trial judge found that the juror was incapable of reaching a rational decision. They simply found that the juror hadn't disclosed things that should have been disclosed during court. And that so infected the first conviction that it was vacated. Well, all right. Let's say that one juror may have been, may have had inappropriate experiences not disclosed during court. There were 11 other jurors. So if the prior conviction has already been vacated because of a problem like that, isn't it kind of a dubious argument to go back and argue about what that jury had accepted and so forth? If it's already been determined that. Well, I'm arguing in terms of how the case appeared to defense counsel. And defense counsel could reasonably conclude that because the state got a conviction at the first trial, it had an excellent chance of getting a conviction at the second trial. And if the defense counsel were placed on the stand and questioned at an evidentiary hearing, we'd find out whether or not that's what he was thinking or not. Is that right? But we haven't had that yet. Your Honor? Right now you're just speculating on that. Defendant here has not presented a single thing from outside the trial court record. In fact, this petition should have been dismissed on grounds of res judicata because everything that every fact argued in defendant's brief is taken directly from transcripts. Not a single thing. Mr. King talks about affidavits. There aren't any relevant affidavits. The facts which he argued before you, the facts which he mentioned in his brief, his whole case on appeal, is based totally on the transcripts and the record on appeal. And therefore, A, all those arguments are barred by res judicata because they were available on direct appeal. And, B, there's no need for an evidentiary hearing when every fact the defendant relies on is taken from the record of the trials. Well, the allegation is ineffective assistance of counsel, and we have a counsel who called a witness who testified the defendant was guilty and failed to call a witness who would have testified that the defendant was not guilty. And how can we determine? Let me ask my question, Mr. Sweeney. How can we determine from the record whether or not that is a sound trial strategy? Because the record shows exactly why it was. Let me go over those two differences. Mr. Sweeney, how would we ever look at ineffective assistance of counsel if it's always res judicata based on the record? Well, for one thing, you don't reach issues in post-conviction actions when they could have been easily raised on direct appeal. I've cited many cases in my brief, in fact, the majority of cases, which reject allegations of ineffective assistance of counsel in post-conviction proceedings. Do so on the basis of the record without requiring an evidentiary hearing. Now, let's look at those two witnesses. You have Elliot Stephens. Now, Elliot Stephens testified at the first trial. He was brought out at the first trial. He was a member of the same street gang as the defendant, but he was a close friend of the defendant, and he was a convicted felon. The 11 all-tainted jurors and the one tainted juror didn't believe him. Now— On the other hand, we don't know whether the one tainted juror swayed everybody else in the jury room, do we? You're making assumptions here. What was there about that juror that would have— We don't know, do we? That's why the original conviction— Was he the juror that possibly may have attended the funeral of the victim? Yes. Now, Elliot Stephens at the first trial gave testimony which was absolutely inconsistent with the alibi defense presented at the second trial. So you don't need an evidentiary hearing to know that it's a matter of trial strategy not to call the witness who contradicts your alibi defense. Now, the alibi defense presented at the second trial, which George Howard produced, was that the defendant came back from Mount Vernon with some friends, including Elliot Stephens and Felice Killian. They stopped at Felice Killian's house, and then Felice Killian and the defendant went to the house of a lady called Lisa Johnson and spent the night having sex, except for one period when Felice Killian left. The alibi defense had to place them somewhere other than Felice Killian's house, because there was a credible witness called Christopher Dixon who said that the defendant wasn't at Felice Killian's house at the time of the stabbing. Now, Elliot Stephens at the first trial testified that, oh, also Felice Killian and the defendant testified that Elliot Stephens and John Hayes showed up at Tanisha Johnson's house after the stabbing. So according to the alibi defense, all four of them, Hayes, Elliot Stephens, Felice Killian, and the defendant were all at Tanisha Johnson's house that night after the stabbing. Elliot Stephens' testimony at the first trial was that he never was at Tanisha Johnson's house, that he never saw a defendant that night until hours after the stabbing when he went to Felice Killian's house, saw a defendant sleeping there, and then they all got together and left town as quickly as they could. Now, do you really? I mean, if George Howard had called Elliot Stephens to contradict the alibi defense at the second trial, Mr. Keene would be up here saying it was ineffective assistance of counsel to call someone who contradicted your alibi defense. I mean, I've cited half a dozen cases in my brief in which ineffective assistance of counsel arguments were rejected on the record, and of course all they have here is the record, when it's clear that it was a matter of professional judgment whether to call a witness or not. In fact, there's a presumption that it's a matter of professional judgment to call a witness or not, and it's certainly a matter of professional judgment when that witness directly contradicts your alibi defense. Now, Georgina Anderson testified for the people at the first trial and named the defendant as the stabber. However, a month and a half after the stabbing, presumably after the street gang in question got to her, she signed a written statement saying that Thyron Edwards was the actual stabber. Now, it was George Howard's theory at the second trial that Thyron Edwards was the stabber. He thought that he should present an alternate suspect to the jury, and there was only one way he could do that as part of his case, and that was by calling Georgina Anderson and then using her statement a month and a half after the stabbing to the effect that Thyron Edwards was the stabber as substantive evidence, which is specifically permitted by Illinois statute. She was the only available defense witness who could name Thyron Edwards as the stabber. Now, Felice Killian was mentally disturbed and a convicted felon and in prison when she testified. It was entirely reasonable to argue that her statement a month and a half after the stabbing, admissible as substantive evidence, was more reliable and certainly capable of creating a reasonable doubt, even though her actual testimony was that the defendant was the stabber. In other words, George Howard did exactly what the state did with John Hayes. John Hayes double-crossed the state and, after repeatedly naming the defendant as the stabber, testified when he was called at trial that Thyron Edwards was the stabber, and the state used John Hayes' prior statements, admissible as substantive evidence, as evidence that the defendant was the person who actually stabbed the victim. George Howard did exactly that. Here's the key message suggested that the prosecutors were ineffective for taking advantage of that rule of law. George Howard did exactly the same thing with Georgina Anderson. He called her and then presented her statement made a month and a half after the stabbing, naming Thyron Edwards as the stabber. She was the only witness that could present such evidence in the defense case. Now, how can it be ineffective assistance of counsel to present substantive evidence, admissible by statute, to someone other than your client's stabbed victim? It's obviously a matter of professional judgment whether the testimony of an imprisoned mentally ill felon subject to pressure by the state is less reliable than the statement made after the stabbing. And even if they were equally reliable, all that George Howard had to do was create a reasonable doubt. So, on the face of the record, and all the defendant relies on is the face of the record, calling Elliott Stevens would have been a bad trial strategy because it would have directly contradicted the alibi defense not only placed the defendant somewhere else than where Elliott Stevens placed him, but placed Elliott Stevens somewhere else than where Elliott Stevens placed himself at the first trial. And how can it be ineffective assistance of counsel to produce the only evidence in the defense case that someone other than the defendant was the stabber? As for Mr. Keene's suggestion that George Howard blundered into having Elliott Stevens barred as a witness, the first thing Mr. Howard said after the judge said that having Elliott Stevens in the audience for identification purposes violated the order of exclusion was, I don't intend to call Elliott Stevens. So he didn't intend to call Elliott Stevens, and he could have requested that he be allowed to call him. Had he had any intention to call him, he could have requested that he be allowed to testify in spite of the violation of the order of exclusion. He didn't make any such request because he didn't know mean to. Now, Thyrone Edwards testified, and he named the defendant as the stabber. He had pled guilty to involuntary manslaughter, and at the time he pled guilty to involuntary manslaughter, he made it absolutely clear that he had nothing directly to do with the stabbing. He was pleading guilty to attempt armed robbery and thus involuntary manslaughter on a theory of accountability. So his story was consistent throughout. There was no subordination of perjury. There's no evidence of perjury. Thyrone Edwards told the same story when he pled guilty as he did later in court. Now, the prosecutor recited a factual basis based on Georgetta Anderson's testimony that was inconsistent with what Thyrone Edwards said, but he was justified in doing so because there was evidence of that effect from Georgetta Anderson. And by stating a factual basis, you're only stating the evidence that you can present. You're not saying that anyone who differs from that evidence is committing perjury. So, you know, perjury is just blowing smoke here. Thyrone Edwards told a consistent story throughout, and the prosecution was entitled to let him tell the story. Now, as he alleged discovery violation, there was no discovery violation, and Mr. Keene is engaged in a misstatement when he claims that when George Howard vehemently objected to the alleged discovery violation, he didn't refer to Rule 412. Both sides referred to the governing Supreme Court rule and argument at sidebar. But there was no discovery violation for the following reasons. The rule requires, in the case of a witness, you turn over written statements and written summaries of oral statements. Those were turned over. George Howard knew exactly what Hayes had said on the numerous occasions in which he had named defendants as stabbers, as, for example, when he pled guilty to second-degree murder and was sentenced to eight years in prison and agreed to testify for the state in this matter. What was not turned over was a non-existent written summary of the oral statement of John Hayes when the prosecutors were preparing him to testify at trial. But for one thing, that was exactly the same as the statements which were turned over. And for another thing, the idea that there was no written summary of that oral statement because for the obvious reason that you don't write down what a witness says when you're prepping him to testify in accordance with prior statements which have already been turned over to the defense. There was no violation of Rule 412 and certainly no constitutional violation of a kind which could be raised in a post-conviction petition because the defense was fully informed of the expected testimony of Hayes. It was the state that got double-crossed when he refused to testify in accordance with his plea of guilty with his oral and written statements naming the defendant as the stabber. So I strongly suspect that the defense had a better idea that Hayes was going to double-cross the prosecution than the prosecution did. So there was no violation of Supreme Court rule. Even if there was, it wasn't a constitutional violation because the defense knew exactly what Hayes had said on the numerous occasions in which he named the defendant as the stabber. And as for the MacGill case, in that case, there was no downside to calling a convicted co-defendant as a defense witness. In this case, there was an obvious downside to calling Elliott Stevens because he would have contradicted the testimony of Felice Killian. He would have contradicted the testimony of the defendant. He would have shown that the alibi defense, as the jury found, was something concocted a long time after the murder, not presented at the first trial, and completely untrue. So, I mean, this isn't a post-conviction action that's presented at this court. It's simply something that could and should have been presented on direct appeal. There's nothing from outside the record that has been presented to this court. Therefore, it was appropriate for the trial court to rule on the basis of the trial record, on the basis of the record, that there has been no showing of ineffective assistance of counsel.  Thank you, counsel. Counsel? Mr. Sweeney, I don't want to get bogged down in the minutia of whether or not we can meritoriously prove after a hearing that there was ineffective assistance of counsel, but I have to answer Mr. Sweeney's question, how could it be ineffective assistance of counsel to have presented a testimony of someone who, in a prior statement, said that another person committed the crime? It might be because it opens it up to rebuttal for the prosecutor to say, why did you give that written statement? Because I was scared to death of this gang member about opening up that little bitty, because that's what happened. And if you are going to put on the testimony of a person who's going to finger your client in open court so that you can impeach them with a written statement that they made because they were afraid of a gang member, you'd at least want to elicit from her the fact that she saw the man that she said in the written statement did the stabbing, that she saw him rifle through the kitchen for a knife, but you don't elicit that? So, I mean, there's all kinds of things to talk about here in terms of, ultimately, whether there was ineffective assistance of counsel that warrants a new trial. I do want to talk about this issue of Grace Judicata. I don't know. I mean, you've sat here a long time, I sat here on post-conviction, and I know the procedural bars that the state raises to post-conviction. And one of them is Grace Judicata. If memory serves me correctly, Grace Judicata is a concept that bars post-conviction relief when the appellate court has ruled on the issue. And it is not a rule of convenience like waiver that deals with issues that could have been raised on direct appeal because they were part of the record. So, I mean, the whole argument of the state with regard to this is skewed. But I would add this, you can look at Maciel, you can look at one case after another, and Justice Chapman, you brought it up, what do you mean there's no right to a hearing if all of the issues are issues claimed on the face of the record? That happens all the time. And besides this, with regard to waiver, I believe, if memory serves me, that there's also a claim of ineffective assistance of appellate counsel to cover that. One last thing, and I want to go back to what I consider to be the most substantial, the most egregious potential problem with, constitutional problem with this case. And that is the fact that the prosecutor allowed to stand testimony on behalf of his star witness, his only witness, but that witness never touched the knife. Because the state can get up and make a factual statement to the court to support the plea, but not one that doesn't believe it, on the evidence. And the state can call George N. Edwards, or Anderson, in the first trial and vouch for her credibility and try to convict Anthony Murray on her testimony, which it did. But it then can't fail to call her and put up another witness to convict him the second time around that says, I had nothing to do with the knife. And sit there and say, let the jury believe that you believe that he's telling the truth. And let me say this, in the overall record in this case, and there are other issues I haven't discussed that are in the brief, closing arguments, for example. This was sharp practice on the part of the prosecutor. This was very sharp practice. There were a lot of things done in this case that weren't curved, weren't right, and it was a close case. And for all those reasons, I would respectfully request this court to follow the third district and with regard to this showing that has been made, find it to be a substantial showing that warrants being fleshed out in the full evidentiary hearing to determine whether or not Anthony Murray received a constitutionally fair trial. Thank you, counsel. We appreciate the briefs and arguments, and counsel will take the case under advisement.